# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 17-CV-04411 (JFB);
№ 13-CR-00640 (JFB)

NIKITAS MARGIELLOS,

Petitioner,

VERSUS

UNITED STATES OF AMERICA,

Respondent.

**MEMORANDUM AND ORDER**
November 6, 2018

JOSEPH F. BIANCO, District Judge:

Nikitas Margiellos ("petitioner"), proceeding *pro se*, moves to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. On August 19, 2014, petitioner pleaded guilty to one count of interstate transportation of stolen property, in violation of 18 U.S.C. § 2314. On July 27, 2016, the Court sentenced petitioner to 120 months' imprisonment, followed by three years' supervised release. Petitioner asserts that his counsel provided ineffective assistance by failing to: (1) adequately inform him of the maximum penalties, minimum penalties, and that the Court would consider other crimes that petitioner committed in connection with his sentencing; (2) object to the United States Sentencing Guidelines ("the Guidelines") enhancements; (3) move to compel the disclosure of exculpatory evidence and impeachment material; and (4) object to the constructive amendment of his indictment. For the reasons that follow, the petition is denied.

I. BACKGROUND

A. Facts

The following facts are adduced from the petition (Pet., ECF No. 244) and the underlying record.

On August 19, 2014, petitioner pleaded guilty, pursuant to a written plea agreement, to one count of interstate transportation of stolen property, in violation of 18 U.S.C. § 2314, for his role in the burglary of a Long Island, New York commercial establishment. (*See* Pet. 1;

Opp. 1, ECF No. 250.)[1] The plea agreement included, among other things, the statutory maximum term of imprisonment for a violation of 18 U.S.C. § 2314, the statutory minimum term of imprisonment for a violation of 18 U.S.C. § 2314, as well as petitioner's estimated Guidelines range, based on petitioner's base offense level and applicable enhancements. (Plea Agmt. 1-3, ECF No. 250-1.) The plea agreement also stated that, "[at] the time of and as part of his plea, the defendant agrees that he will allocute that he participated in the burglaries and attempted burglaries set forth in Exhibit A." (*Id.* at 2.)

At the outset of the plea hearing, the Court confirmed that petitioner was competent to proceed with the guilty plea. (P. 3-4.)[2] The Court then asked petitioner whether he was satisfied with the services of his counsel, and petitioner responded that he was. (P. 5.) The Court also informed petitioner of the constitutional rights he was forfeiting by choosing to plead guilty, and petitioner confirmed that he was willing to give up such rights by pleading guilty. (P. 5-10.) Next, the Court explained the potential penalties petitioner faced as a result of his guilty plea, including, but not limited to, the following:

> The Court: Let me review with you the maximum penalties as well any mandatory minimum penalties for the crime to which you are pleading guilty.
>
> There is a maximum term of imprisonment of ten years. There is no minimum term of imprisonment.
>
> There is a maximum supervised release term of three years to follow any term of imprisonment.
>
> \* \* \*
>
> Do you understand that these are the maximum penalties, as well as any mandatory minimum penalties, for the crime to which you are pleading guilty?
>
> The Defendant: Yes, your Honor.

(P. 10-11.) After this exchange, the Court established that petitioner had entered into a plea agreement with the government and that petitioner understood the contents of the agreement. (P. 14-16.)

Prior to proceeding with a factual allocution, the Court explained the following:

> The Court: I also want to emphasize to you that, as you know, in paragraph one on page 2 you agree that, in addition to Count Two, that you are going to allocute to your guilt and that I will take into consideration the burglaries which are attached and listed in your plea agreement in Exhibit A.
>
> Do you understand that your guidelines calculation will include that conduct and I will be sentencing you on that conduct as well as the conduct on Count Two? Do you understand that?
>
> The Defendant: Yes, your Honor.

(P. 16-17.) Petitioner also stated that he understood that, under his plea agreement, if the Court sentenced him to 120 months' imprisonment or less, he was waiving his right to appeal or collaterally attack his conviction

---

[1] The Court uses the pagination assigned by the electronic case filing system when citing to the documents filed in this case.

[2] Numbers in parentheses preceded by "P." refer to pages of the August 19, 2014 transcript of petitioner's guilty plea proceeding. (ECF No. 250-2.)

and sentence. (P. 17.)

Petitioner then explained his role in the crime, admitting that, between April 2010 and June 2012, he stole sunglasses valued in excess of $5,000 from a warehouse in Long Island, New York, and packed the stolen sunglasses into a van, which his co-conspirators transported out of state. (P. 19-21.) As set forth in the plea agreement, petitioner also admitted at the plea proceeding to participating in multiple other burglaries with an understanding that they would be considered in the calculation of his sentence. (P. 16-17, 22-24.)[3] Thereafter, the government summarized what its proof would have been if petitioner had gone to trial, and petitioner confirmed that the government accurately described his conduct. (P. 24.)

Finally, petitioner formally entered his guilty plea to the charge of interstate transportation of stolen property. (P. 25.)

Petitioner confirmed that he was pleading guilty because he was in fact guilty, and that his guilty plea was voluntarily and freely given. (*Id.*) The Court accepted petitioner's guilty plea, and found petitioner guilty of Count Two of the indictment, charging petitioner with interstate transportation of stolen property, in violation of 18 U.S.C. § 2314. (*Id.*)

Petitioner's sentencing hearing was held on July 27, 2016. Before the sentence was imposed, the Court considered objections from counsel regarding sentencing enhancements contained in the presentence report. (S. 4.)[4] Specifically, counsel for petitioner objected to a 20-level enhancement for the loss amount, arguing that the amended guidelines manual (effective November 1, 2015) should be used because it was more favorable to petitioner, resulting in an 18-level (instead of a 20-level) enhancement for the loss amount. (S. 4.) The Court and the government agreed, the Court

---

[3] The Court confirmed that petitioner participated in the following burglaries: (1) Rollin Dairy, Farmingdale, New York (winter 2009); (2) Sal's Fruit Tree, Copiague, New York (April 20, 2010); (3) Wonder Bread, Melville, New York (November 25, 2009); (4) Levittown Fish Market, East Farmingdale, New York (December 20, 2010); (5) Garal Wholesalers, West Babylon, New York (January 22-25, 2010); (6) Pennock Floral Distributors, Plainview, New York (February 2010); (7) Eyeking, Plainview, New York (April 29-30, 2010); (8) Power supply/generator business on New Highway in North Amityville, New York (summer 2010); (9) First Commemorative Mint, Farmingdale, New York (summer 2010); (10) Center Candy, Freeport, New York (July 2010); (11) Dr. Stephen Greenberg's Office, Woodbury, New York (October 14, 2010); (12) Island Car Wash, Centereach, New York (February 10-11, 2010); (13) Eastern Distributors, Brentwood, New York (fall 2010); (14) Green Vending, Farmingdale, New York (2010); (15) John's Farms, Plainview, New York (2010); (16) Landmark Foods, Holtsville, New York (March 23, 2011); (17) Liberty Storage, Jersey City, New Jersey (September 2011); (18) North Ritz Club, Syosset, New York (October 2011); (19) Arrow Produce, Westbury, New York (July 10, 2010); (20) Marlou Uniforms, New Hyde Park, New York (August-September 2011); (21) Risona Inc., Hicksville, New York (September 2011); (22) Sunset Perfume, Hicksville, New York (October 24, 2011); (23) Perfume warehouse, Deer Park, New York (November 2011); (24) US Fragrances, Hicksville, New York (December 2011); (25) Marley Building Materials, Inc., Lindenhurst, New York (2011); (26) Cimino Foods, Lindenhurst, New York (2011); (27) Vincenzo's Restaurant and Lounge, Islip Terrace, New York (March 12, 2012); (28) Drug distributor, Bohemia, New York (April 2012); (29) Universal Perfume & Cosmetics, Hauppauge, New York (May 2012); (30) Unisafe, Bohemia, New York (May 28, 2012); (31) Car wholesaler, Bohemia, New York (May 2012); (32) Colonial Wire, Hauppauge, New York (spring 2012); (33) Produce wholesaler, Farmingdale, New York (January-February 2010); (34) Gershow Metals, Valley Stream, New York (March-April 2012); and (35) Coach, Woodbury, New York (December 5, 2010). (P. 22-24; Pet. Plea Agmt. Ex. A.) Additionally, petitioner admitted to participating in the commission of multiple burglaries of private residences. (P. 23-24; Plea Agmt. Ex. A.)

[4] Numbers in parentheses preceded by "S." refer to pages in the July 27, 2016 transcript of petitioner's sentencing proceeding. (ECF No. 250-3.)

3

recalculated petitioner's guidelines range based on the revision, and counsel for petitioner and the government agreed that the Court's calculation was correct. (S. 4-5.)

The Court then summarized the applicable sentencing enhancements, stating:

> It is a base offense level six. I find that the loss amount is $8,244,178.20 based on the count of conviction as well as the relevant conduct, as set forth in the presentence report regarding the other burglaries. That is, as I said a moment ago, an 18-level increase.
>
> Because the crew used various techniques, including scanners and telephone jammers, in order to effectuate the burglaries, it is clear to me that there was use of sophisticated means. A two-level enhancement is warranted for that.
>
> Over ten victims were involved in the offense including the relevant conduct, so a two-level increase is warranted for that.
>
> The instant offense also involved the receipt of stolen property. And Mr. Margiellos was involved in the business of receiving and selling that stolen property that was obtained from the burglaries, so a two-level enhancement is warranted for that.
>
> Mr. Margiellos recruited other individuals to participate in this activity and was organizer or leader of that criminal activity. It involved five or more participants. It was otherwise extensive, as set forth in the presentence report. So a four-level increase is warranted for that.
>
> Mr. Margiellos accepted responsibility by pleading guilty in a timely manner, and he is entitled to a three-level reduction for that, which results in the total offense level of 31.
>
> He has three criminal history points stemming from the 1998 state conviction which was related to the federal conviction before Judge Hurley, and therefore the case before Judge Hurley did not receive any additional criminal history points.
>
> So he has three criminal history points, for a criminal history category of II, and that results in the 121-to-151-month advisory range, although, as I said, because of the statutory maximum, it is ten years that becomes the effective advisory range in this case.

(S. 5-6.) Neither counsel for petitioner nor the government objected to these determinations. (S. 8.)

Following arguments from petitioner's counsel and the government, the Court imposed a sentence of 120 months' imprisonment followed by three years' supervised release. (S. 33.) The Court explained that, in reaching this sentence, it considered all of the factors listed in 18 U.S.C. § 3553(a), including, but not limited to, the gravity of the offense committed, the economic and emotional harm suffered by the numerous victims, and the fact that petitioner had committed these crimes after receiving a lenient sentence for the same type of criminal conduct. (S. 27-29.) The Court then stated:

> So those factors, both the nature and the circumstances of this

4

crime, the history and characteristics of Mr. Margiellos in terms of the prior conviction, warrant an extremely high sentence; as well as, as Mr. Caffarone noted, the need to provide specific deterrence to Mr. Margiellos, who clearly did not learn his lesson from his prior conviction; to promote respect for the law; to protect the public from his further criminal activities; as well as to send a message of general deterrence to those who are involved in burglarizing businesses, that they are going to go away for a long time if they engage in this type of criminal activity.

So all of the factors that I have pointed to warrant an extremely high sentence. In fact, but for the statutory maximum, there would be a good argument that Mr. Margiellos should get more than ten years. And in fact my sentence here would be the same even if the guideline range were different, for all the reasons that I have indicated. But there is part of me that thinks ten years is not even enough for the harm that he has done in light of his background.

(S. 29-30.)

B. Procedural History

On July 19, 2017, petitioner moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 244.) Petitioner did not directly appeal his conviction or sentence prior to filing his § 2255 motion. The government opposed the § 2255 motion on September 11, 2017. (ECF No. 250.) On October 18, 2017, petitioner submitted a reply in support of his petition. (ECF No. 253.)

II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a prisoner sentenced in federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" when the petitioner claims "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). If a claim that petitioner raises in a § 2255 motion has not been previously raised on direct appeal, generally, the claim is procedurally barred unless the petitioner can show cause and prejudice or actual innocence. *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *Rosario v. United States*, 164 F.3d 729, 732 (2d Cir. 1998). However, this bar does not apply to claims of ineffective assistance of counsel. The Supreme Court has stated that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Massaro*, 538 U.S. at 504.

With respect to the issue of an evidentiary hearing, § 2255 states that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." The Second Circuit has made clear that, "[t]o warrant a hearing on an ineffective assistance

5

of counsel claim, the defendant need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that 'he will necessarily succeed on the claim.'" *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (quoting *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000)). The Second Circuit has provided guidance on how a district court should determine when an evidentiary hearing is necessary. *See id.* at 213-15. In particular, the Court noted that, given the absence of pre-motion discovery in a § 2255 case, "a petitioner may need only to identify available sources of relevant evidence rather than obtain it as in civil cases or seek a discovery order from the court under Rule 6 of the Rules Governing Section 2255 Proceedings." *Id.* at 213-14.

In the instant case, applying the above-referenced standard, no evidentiary hearing is warranted because petitioner's motion and the underlying record conclusively demonstrate that he is entitled to no relief under § 2255. As discussed below, the record contradicts the grounds for petitioner's ineffective assistance of counsel claims, and, therefore, petitioner fails to meet *Puglisi*'s plausibility standard. Additionally, the record contains all evidence relevant to petitioner's claims, and petitioner has identified no documents or other evidence outside of the record that could aid the Court in deciding petitioner's claims. Accordingly, an evidentiary hearing on petitioner's claims is unwarranted under Rule 4(b).

### III. DISCUSSION

Petitioner argues that he is entitled to relief under § 2255 because his counsel provided ineffective assistance. For the reasons that follow, the Court finds that petitioner's claims are without merit.

A. Appeal Waiver

As an initial matter, the government argues that petitioner's waiver of his right to appeal prevents the Court from considering petitioner's claims. (*See* Opp. 3-4.) Generally, "a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable." *United States v. Moore*, 306 F. App'x 628, 629 (2d Cir. 2009) (quoting *United States v. Djelevic*, 161 F.3d 104, 106 (2d Cir. 1998)). Such a waiver applies to petitions for habeas relief under 28 U.S.C. § 2255. *See, e.g.*, *Garcia-Santos v. United States,* 273 F.3d 506, 508 (2d Cir. 2001); *Lisnoff v. United States*, No. 05-CV-1209 (NGG), 2006 WL 1367413, at *2-3 (E.D.N.Y. May 18, 2006).

In the instant case, petitioner entered into a plea agreement, which included an agreement not to file an appeal or otherwise challenge his conviction or sentence (under § 2255 or any other provision) if his sentence was 120 months or lower. (Plea Agmt. 4; P. 14-17.) Thereafter, the Court imposed a term of imprisonment of 120 months, which fell within the scope of the waiver. (S. 34.) Further, the record of the guilty plea demonstrates that petitioner executed the waiver knowingly and voluntarily. During the plea hearing, the Court reviewed the waiver provisions with petitioner, confirming he understood the content of the waiver and that he was freely proceeding with the waiver:

> The Court: I also want to direct your attention to paragraph 4 in which you, among other things, agree to not file an appeal or otherwise challenge by petition, under Section [2]255 or any other provision, the conviction or sentence in the event the court imposes a term of imprisonment of 120 months or below.
>
> In other words, if I sentence you to 120 months in jail or anything less than 120 months in jail, you are

6

giving up your right to appeal or otherwise challenge, in any way, the conviction or sentence in this case.

Do you understand that?

The Defendant: Yes, your Honor.

The Court: And you understand, because that is the statutory maximum here, that the most I can impose is 120 months, and you are in effect giving up your right to appeal the conviction and sentence in this case.

Do you understand that?

The Defendant: Yes, your Honor.

The Court: Are you waiving that right knowingly and voluntarily?

The Defendant: Yes.

(P. 17.) Accordingly, upon review of the record, the Court concludes that the waiver is enforceable, as the record reflects that petitioner knowingly and voluntarily waived his appellate rights.

However, insofar as petitioner is raising ineffective assistance of counsel claims, these "survive[] the guilty plea or the appeal waiver . . . where the claim concerns 'the advice [the defendant] received from counsel.'" *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (third alteration in original) (quoting *United States v. Torres*, 129 F.3d 710, 715-16 (2d Cir. 1997)).

Thus, the Court turns to the merits of petitioner's ineffective assistance of counsel claims.

B. Ineffective Assistance of Counsel

1. Legal Standard

Under the standard promulgated in *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner is required to demonstrate two elements in order to prevail on a claim of ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," *id*. at 688, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694.

The first prong requires a showing that counsel's performance was deficient. To demonstrate deficient performance, "a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' determined according to 'prevailing professional norms.'" *Murden v. Artuz*, 497 F.3d 178, 198 (2d Cir. 2007) (quoting *Strickland*, 466 U.S. at 688, 694)). However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id*. (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)). In assessing performance, a court "must apply a 'heavy measure of deference to counsel's judgments.'" *Id*. (quoting *Strickland*, 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance, if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "strategic choices made after thorough investigation of law and facts

7

relevant to plausible options are virtually unchallengeable," *id*. at 588 (quoting *Strickland*, 466 U.S. at 690). "However, 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id.* (quoting *Strickland*, 466 U.S. at 690-91).

The second prong focuses on prejudice to a petitioner. A petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" means that the errors were of a magnitude such that they "undermine[] confidence in the outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "[T]he question to be asked in assessing the prejudice from counsel's errors . . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (alterations in original) (quoting *Strickland*, 466 U.S. at 695). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 691). Additionally, "[u]nlike the determination of trial counsel's performance under the first prong of *Strickland*, the determination of prejudice 'may be made with the benefit of hindsight.'" *Hemstreet, v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007) (quoting *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994)).

"In the context of a guilty plea, *Strickland's* prejudice prong requires a defendant to demonstrate a reasonable probability that, 'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Munson v. Rock*, 507 F. App'x 53, 56 (2d Cir. 2013) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). The party alleging ineffective assistance of counsel bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

2. Analysis

As noted, petitioner asserts that his counsel provided ineffective assistance by failing to: (1) adequately inform him of the statutory maximum penalties, minimum penalties, and the fact that the Court would consider other burglaries that petitioner committed during sentencing; (2) object to the Guidelines enhancements; (3) move to compel the disclosure of exculpatory evidence and impeachment material; and (4) object to the constructive amendment of his indictment. The Court analyzes each argument in turn.

    a. Inadequately Informed of Potential Sentence

Petitioner claims that his counsel was ineffective because he failed to inform petitioner of the maximum statutory penalties, minimum penalties, and that petitioner's other burglaries would be considered as relevant conduct in the calculation of his sentence, which petitioner claims renders his guilty plea invalid.

Petitioner's claim is belied by the record. First, the plea agreement set forth the maximum statutory penalties and minimum penalties for a violation of 18 U.S.C. § 2314, and provided that petitioner would allocate that he participated in the additional burglaries (which conduct was included in the Guidelines enhancements and estimated offense level). (Plea Agmt. 1-2, Ex. A.)

Second, the Court advised petitioner of

8

each of these considerations during his plea hearing and, under oath, petitioner confirmed that he understood:

> The Court: Let me review with you the maximum penalties as well [as] any mandatory minimum penalties for the crime to which you are pleading guilty.
>
> There is a maximum term of imprisonment of ten years. There is no minimum term of imprisonment.
>
> There is a maximum supervised release term of three years to follow any term of imprisonment.
>
>     \*    \*    \*
>
> Do you understand that these are the maximum penalties, as well as any mandatory minimum penalties, for the crime to which you are pleading guilty?
>
> The Defendant: Yes, your Honor.
>
>     \*    \*    \*
>
> The Court: I also want to emphasize to you that, as you know, in paragraph one on page 2 you agree that, in addition to Count Two, that you are going to allocute to your guilt and that I will take into consideration the burglaries which are attached and listed in your plea agreement in Exhibit A.
>
> Do you understand that your guidelines calculation will include that conduct and I will be sentencing you on that conduct as well as the conduct on Count Two? Do you understand that?
>
> The Defendant: Yes, your Honor.

(P. 10-11, 16-17.)

In short, there is nothing in the plea proceeding that suggests petitioner was not advised of these issues by his attorney. In any event, petitioner has failed to demonstrate prejudice because the Court specifically advised him of each of these considerations prior to his guilty plea. *See Strickland*, 466 U.S. at 690-91.

Relatedly, petitioner also makes broad allegations that his guilty plea was not knowing and voluntary in violation of his constitutional rights. The Court disagrees.

The well-established standard for determining whether a guilty plea is valid is whether it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). "[A] plea is deemed 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way; it is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988). As such, a "'plea of guilty entered by one fully aware of the direct consequences' of the plea is voluntary in a constitutional sense 'unless induced by threats…, misrepresentation…, or perhaps by promises that are by their nature improper. . . .'" *Bousley v. United States*, 523 U.S. 614, 619 (1998) (alteration in original) (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)). When considering the validity of a guilty plea, courts look to the sworn statements made during a plea allocution, noting that "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

9

Upon review of the plea hearing, there is nothing in the record to indicate that petitioner's guilty plea was less than knowing and voluntary. Under oath, petitioner stated that he was entering a plea of guilty with a clear mind, and having had sufficient time to discuss the plea with his counsel. (P. 2-4.) Petitioner confirmed that he was satisfied with his counsel's representation, and that he understood the constitutional rights he was forfeiting by entering his guilty plea. (P. 5-8.) The Court ensured that petitioner understood the charge to which he was pleading guilty, as well as the potential sentence he faced. (P. 10-11.) With respect to the plea agreement, petitioner stated that he had read the agreement, discussed the contents with his attorney, and understood the agreement before signing it. (P. 14-15.) Before the Court accepted petitioner's guilty plea, petitioner stated that he had not been threatened to plead guilty, that he was pleading guilty voluntarily and of his own free will, and that he was in fact guilty of the offense charged. (P. 18, 25.) Further, petitioner engaged in a detailed factual colloquy regarding his role in the charged criminal conduct, and confirmed his participation in numerous other burglaries. (P. 19-23.) In sum, having reviewed the plea proceeding, the Court concludes that petitioner's plea is valid.

### b. Failure to Object to the Guidelines Enhancements

Petitioner contends that he received ineffective assistance of counsel when his attorney failed to object to various Guidelines enhancements. Specifically, petitioner takes issue with: (1) the leadership role enhancement; (2) the sophisticated means enhancement; (3) the manner in which the loss amount was calculated; (3) the receipt of stolen property enhancement; (4) impermissible "double counting" in the calculation of his Guidelines range; and (5) the version of Guidelines used. (*See* Pet. 4.)

As an initial matter, petitioner's claim that counsel was deficient for failing to argue that the amended guidelines should be used to calculate the sentence fails. As is clear from the record, petitioner's counsel argued at the sentencing hearing that the more recent version of the Guidelines should be used, the Court and the government agreed, and, as a result, the Court lowered the enhancement for loss amount by two levels. (S. 4-5.)

As for petitioner's other arguments, although petitioner identifies multiple sentencing enhancements that he states do not apply, petitioner fails to provide reliable support for these conclusory assertions.[5] (*See* Pet. 17-21.) "It is well established that conclusory allegations . . . are insufficient to meet the rigorous standard under *Strickland*." *Smalls v. McGinnis*, No. 04 Civ. 0301 (AJP), 2004 WL 1774578, at *23 (S.D.N.Y. Aug 10, 2004) (collecting cases). Further, as petitioner fails to articulate why the enhancements are inapplicable, he fails to demonstrate that any objections to their application would be valid. *See Hicks v. Ercole*, No. 09-CV-2531 (AJN), 2015 WL 1266800, at *23 (S.D.N.Y. Mar. 18, 2015) ("The failure of a lawyer to invoke meritless objections cannot constitute constitutionally deficient performance."). Petitioner's self-serving statements that the enhancements do not apply cannot satisfy the

---

[5] As to the leadership role enhancement, petitioner includes an affidavit from a co-defendant stating that the statutory enhancement for a leadership role does not apply to petitioner. (Pet. 42.) The affidavit states, in relevant part: "In my professional opinion concerning this case, Nikitas Margiellos was not the leader or organizer. And should not have received an additional 4 Offense Level Enhancements for being categorized as a Leader or Organizer. It would be unfair otherwise." (*Id.*) The Court does not find that this conclusory affidavit advances petitioner's ineffective assistance of counsel claim.

deficient performance prong of the *Strickland* test.

Even assuming *arguendo* that petitioner could establish that his counsel's performance was deficient for failing to object to the enhancements, petitioner could not satisfy the prejudice prong of the *Strickland* analysis because he cannot show that, without the application of the sentencing enhancements, the result of the proceeding would have been different. During the sentencing proceeding, the Court made clear that the imposed sentence would be the same with or without the Guidelines enhancements, stating: "And in fact my sentence here would be the same even if the guideline range were different." (S. 30.) Accordingly, petitioner cannot show that he was prejudiced by his counsel's performance. *See Cekaj v. United States*, Nos. 14-cv-03004 (GBD), 12-cr-00600 (GBD), 2016 WL 354195, at *7 (S.D.N.Y. Jan. 25, 2016) (finding no prejudice when "[n]one of the alleged errors would have resulted in a different sentence imposed by the Court").

Additionally, in connection with this claim, petitioner also states that his counsel was ineffective when he "failed to properly and timely investigate [his] case." (Pet. 17.) It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. However, a reasonable investigation does not "compel defense counsel to investigate comprehensively every lead or possible defense, or 'to scour the globe on the off-chance something will turn up.'" *Greiner*, 417 F.3d at 321 (internal citation omitted) (quoting *Rompilla*, 545 U.S. at 383). Thus, "[a] petitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Halo v. United States*, No. 06 CV 5041(ARR)(RLM), 2007 WL 1299158, at *13 (E.D.N.Y. Apr. 30, 2007) (quoting *Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir. 1990)). Petitioner only provides conclusory allegations that his counsel did not fully investigate his case. (Pet. 38-39.) Accordingly, petitioner fails to demonstrate that counsel's performance was deficient based on a failure to properly investigate.

### c. Failure to Compel Disclosure of Exculpatory and Impeachment Material

Petitioner argues that he received ineffective assistance of counsel because his attorney allegedly failed to move to compel the disclosure of exculpatory and impeachment material.

It is well established that "the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987). For petitioner to succeed on this ground, "it must be shown that: (1) the Government failed to disclose favorable evidence, and (2) the evidence it suppressed was 'material.'" *Petrucelli v. United States*, Nos. 05 Civ. 9582(TPG), 02 CR 099(TPG), 2009 WL 4858081, at *12 (S.D.N.Y. Dec. 15, 2009) (citing *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995)). Undisclosed evidence is "material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "The burden of proving that the Government failed to disclose such evidence lies with the petitioner, and '[c]onclusory allegations that the government "suppressed" or "concealed" evidence' are insufficient to satisfy this burden." *Wolfson v. United States*,

11

907 F. Supp. 2d 418, 424-25 (S.D.N.Y. 2012) (alteration in original) (quoting *Harris v. United States*, 9 F. Supp. 2d 246, 275 (S.D.N.Y. 1998), *aff'd*, 216 F.3d 1072 (2d Cir. 2000)). In the context of guilty pleas, "evidence is considered material where 'there is a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial.'" *United States v. Avellino*, 136 F.3d 249, 256 (2d Cir. 1998) (quoting *Tate v. Wood*, 963 F.2d 20, 24 (2d Cir. 1992)).

Here, petitioner claims that his counsel failed to hold the government to their obligation of providing petitioner with all exculpatory evidence and impeachment material, but he fails to state with any specificity what evidence he claims he was deprived of, or why such evidence was material. For example, petitioner lists categories of documents that might be turned over in a case, such as the government's interview notes and witness proffers, but he fails to explain how any such documents would have affected his decision to plead guilty. (*See* Pet. 28-30.) Petitioner also questions how the government calculated the loss amount for the stolen sunglasses (*see id.* at 30), but, as the government points out, petitioner's enhancement for the loss amount would have been the same even if the Court disregarded the loss amount based on the stolen sunglasses (*see* Opp. 11). Without providing any suggestion of what purported exculpatory information was withheld, petitioner does not meet his burden, and, accordingly, does not demonstrate deficient performance by counsel. *See United States ex. rel. Jiggetts v. Follette*, 308 F. Supp. 468, 471 (S.D.N.Y. 1970), *aff'd*, 446 F.2d 114 (2d Cir. 1971) (rejecting *Brady* claim when "[p]etitioner [was] engaging in mere unsupported speculation"). Further, petitioner does not demonstrate how he was prejudiced by this alleged error because he does not indicate how this material would have altered the resulting plea or sentence.

### d. Failure to Object to the Constructive Amendment of the Indictment

Petitioner further contends that his attorney was ineffective by failing to object to the constructive amendment of the indictment. It appears that petitioner is arguing that the above-discussed sentencing enhancements constitute elements of the crimes and should have been included in the indictment. (Pet. 5, 22-27.)

The Second Circuit has held that an indictment is constructively amended "when 'the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.'" *United States v. Mollica*, 849 F.2d 723, 729 (2d Cir. 1988) (quoting *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir. 1986)). "To prevail on a constructive amendment claim, petitioner must demonstrate that either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." *United States v. Stewart*, 101 F. App'x 845, 848 (2d Cir. 2004) (quoting *United States v. Frank*, 156 F.3d 332, 337 (2d Cir. 1998) (per curiam)).

Petitioner cites *Apprendi v. New Jersey*, 530 U.S. 466 (2000) to support his claim that failure to allege his sentencing enhancements in the indictment constructively amended the indictment. (*See* Pet. 22-25.) In *Apprendi*, the Supreme Court determined that "[o]ther than the fact of a prior conviction, any fact that

increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490; *see also Alleyne v. United States*, 570 U.S. 99, 108 (2013). However, this "does not mean that any fact that influences judicial discretion must be found by a jury." *Alleyne*, 570 U.S. at 116.

The maximum penalty for interstate transportation of stolen property is ten years' imprisonment. 18 U.S.C. § 2314. The Guidelines enhancements have no impact on the statutory maximum. This fact was acknowledged by the Court when it stated at the sentencing hearing that petitioner's recommended Guidelines range was 121 to 151 months of incarceration, but, given that the range exceeded the statutory maximum, the actual maximum term was 120 months. (S. 4.) As such, the Court's ultimate sentence of 120 months did not surpass the Guidelines range, is within what is prescribed by statute, and does not "increase[] the penalty for [the] crime beyond the prescribed statutory maximum." *Apprendi*, 530 U.S. at 490. Therefore, petitioner is unable to demonstrate any error by counsel in failing to insist the sentencing enhancements be included in the indictment.

In addition, as discussed above, petitioner is unable to demonstrate prejudice in light of the fact that the Court stated that petitioner's sentence would have been the same regardless of the enhancements. (S. 30 ("[M]y sentence here would be the same even if the guideline range were different.").)

Accordingly, the claim of ineffective assistance of counsel fails.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that the petitioner has demonstrated no basis for relief under 28 U.S.C. § 2255. Accordingly, this petition is denied in its entirety.

Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court shall close this case.

SO ORDERED.



JOSEPH F. BIANCO
United States District Judge

Dated: November 6, 2018
Central Islip, New York

\* \* \*

Petitioner is proceeding *pro se*. Respondent is represented by Brendan G. King, United States Attorney's Office, Eastern District of New York, 271 Cadman Plaza East, Brooklyn, NY 11201 and Christopher C. Caffarone, United States Attorney's Office, Eastern District of New York, 610 Federal Plaza, Central Islip, NY 11722.

13